# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| YOLANDA M., | Case No. CV 18-01471-DFM |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Deputy Commissioner of Operations, performing duties and functions not reserved to the Commissioner of Social Security, | |
| Defendant. | |

Yolanda M. ("Plaintiff") appeals from the Social Security Commissioner's final decision denying her application for Supplemental Security Income ("SSI").[1] The Commissioner's decision is AFFIRMED and this case is dismissed with prejudice.

## I.  BACKGROUND

Plaintiff filed an application for SSI on October 21, 2013, alleging disability commencing June 5, 2010. See Dkt. 14, Administrative Record

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

("AR") 418-24. After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). See AR 239-54. A hearing was held on February 1, 2016, and Plaintiff received an unfavorable decision on March 7, 2016. See AR 84-97, 203-19. Plaintiff appealed, and on April 27, 2017, the Appeals Council vacated the ALJ's decision and remanded for further proceedings. See AR 220-25.

On September 27, 2017, Plaintiff appeared for another hearing. See AR 98-129. On October 23, 2017, Plaintiff received a second unfavorable decision. See AR 13-28. The ALJ found that Plaintiff had the severe impairments of Lupus, Sjogren's syndrome, arthritis, status post breast cancer, and plantar fasciitis. See AR 19. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work except work involving standing for more than 6 hours, walking for more than 4 hours, being outdoors or exposed to extreme cold, or work involving more than frequent bilateral handling and fingering. See id. The ALJ determined that Plaintiff could perform her past relevant work as an appointment clerk and receptionist. See AR 22. Accordingly, the ALJ concluded that Plaintiff was not disabled. See id.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-6. This action followed. See Dkt. 1.

## II.   DISCUSSION

The parties dispute whether the ALJ erred in (1) rejecting the opinions of Plaintiff's treating physician and (2) discrediting Plaintiff's subjective symptom testimony. See Dkt. 19, Joint Stipulation ("JS") at 3.

### A.   Medical Opinion Evidence

Plaintiff contends the ALJ improperly rejected the opinion of her treating rheumatologist, Dr. Emil Heinze. See JS at 3-6.

## 1. Legal Standard

"Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014). When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). In so doing, the ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bray v. Comm'r of SSA, 554 F.3d 1219, 1228 (9th Cir. 2009). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. See 20 C.F.R. § 416.927(c).

## 2. Medical Opinion

In September 2013, Dr. Heinze completed a Lupus Medical Source Statement. See AR 757-61. Dr. Heinze opined that Plaintiff had marked limitations in activities of daily living and moderate limitations in maintaining social functioning and completing tasks in a timely manner. See AR 758. Dr. Heinze opined that Plaintiff could walk one city block, sit for 20 minutes and stand for 15 minutes at a time, sit for 2 hours and stand for less than 2 hours in an 8-hour day, needed two unscheduled breaks of 30 minutes each, could

occasionally lift less than 10 pounds, rarely twist, stoop, and climb stairs, never crouch/squat or climb ladders, would be off task 15% of a typical work day, be absent more than four days per month, and was capable of low stress work. See AR 759-61.

In January 2015, Dr. Heinze completed another Lupus Medical Source Statement. See AR 752-56. Dr. Heinze opined that Plaintiff had none or mild limitations in maintaining social functioning and moderate limitations in activities of daily living and completing tasks in a timely manner. See AR 753. Dr. Heinze opined that Plaintiff could walk one city block, sit and stand for an hour at a time, sit and stand for less than 2 hours in an 8-hour day, needed unscheduled breaks of 15-20 minutes every 20-30 minutes, could rarely lift less than 10 pounds, rarely twist, stoop, crouch/squat, or climb stairs, never climb ladders, would be off task 25% or more of a typical work day, be absent more than four days per month, and was capable of low stress work. See AR 753-56.

In March 2016, Dr. Heinze opined that Plaintiff's medical conditions prevented full-time sedentary work. See AR 1204-05. In April 2017, Dr. Heinze wrote that Plaintiff was unable to work at a full-time job "[d]ue to her ongoing disease activity and symptoms." AR 1352. In July 2017, Dr. Heinze completed a third Lupus Medical Source Statement. See AR 1353-58. Dr. Heinze opined that Plaintiff had marked limitations in activities of daily living and completing tasks in a timely manner and moderate limitations in maintaining social functioning. See AR 1355. Dr. Heinze opined that Plaintiff could walk one city block, sit for 20 minutes and stand for 10 minutes at a time, stand for less than 2 hours and sit for 2 hours in an 8-hour day, needed three or four unscheduled breaks of 20 minutes each, could rarely lift 10 pounds, occasionally twist but rarely stoop or climb stairs, never crouch/squat or climb ladders, would be off task 25% or more of a typical work day, be

absent more than four days per month, and was capable of low stress work. See AR 1356-58.

### 3. ALJ Reasoning and Analysis

While the ALJ agreed with Dr. Heinze that Plaintiff was restricted to less than sedentary work, she did not give "significant weight" to Dr. Heinze's opinions because they were not supported by objective findings, relied heavily on Plaintiff's subjective complaints, and were internally inconsistent. See AR 21. The Court finds that the ALJ offered specific, legitimate reasons for discounting Dr. Heinze's opinions.

First, the ALJ properly discredited Dr. Heinze because he "submitted numerous fairly similar opinions without indicating any supporting objective findings." AR 21; see Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (rejecting treating physician's opinion where his notes "provide[d] no basis for the functional restrictions he opined should be imposed on [the claimant]"). All of Dr. Heinze's medical source statements contained check-the-box opinions, with virtually no explanation of the evidence he relied on in determining Plaintiff's limitations. See De Guzman v. Astrue, 343 F. App'x 201, 209 (9th Cir. 2009) (" The ALJ is . . . free to reject check-off reports that d[o] not contain any explanation of the bases of their conclusions.") (citation omitted). Indeed, Dr. Heinze's reports (spanning nearly four years) are virtually identical despite Plaintiff reporting varying problems and complications during that period. And although Dr. Heinze states he has treated Plaintiff on a quarterly basis since 2011, see e.g., AR 1354, those treatment notes do not appear in the administrative record, and Plaintiff does not refer to them in the Joint Submission.

To the extent Plaintiff argues that Dr. Heinze's opinions are substantiated by treatment records from UCLA Medical Center (where he works), such argument is belied by the record. For example, in the July 2017

report, Dr. Heinze opined that Plaintiff had joint pain with tenderness and swelling, severe fatigue, and had marked limitations in activities of daily living and completing tasks in a timely manner. See AR 1354-55. In contrast, the report of a physical examination of Plaintiff conducted by a UCLA physician that same month reflected that Plaintiff did not have fatigue or any muscle pain, back pain, joint pain, or stiffness. See AR 1750. Nor do the records indicate that Plaintiff had serious problems at that time with respect to activities of daily living or completing tasks.

Second, the ALJ properly discredited Dr. Heinze because he relied "heavily on the claimant's subjective complaints," which the Court agrees are not supported by the medical evidence. AR 21; see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding ALJ properly rejected treating physician's opinion because it was based on claimant's subjective complaints that ALJ did not find credible). For example, Dr. Heinze consistently limited Plaintiff to minimal standing and sitting despite contemporaneous medical records stressing dermatological problems but noting Plaintiff did not have joint pain in her feet. See AR 1335 ("Symptoms of joint pain primarily involved the fingers."), 1750 (noting no joint pain).

The ALJ also discredited Dr. Heinze's opinions because they were inconsistent, e.g., opining that Plaintiff could never be around smoke without indicating that she consistently abuses tobacco. See AR 21. The Court need not determine whether these inconsistencies are sufficient to discount Dr. Heinze's opinion because the ALJ offered two other specific and legitimate reasons for doing so. See Stout v. Comm'r, SSA, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding harmless errors that are "inconsequential to the ultimate nondisability determination").

**B.**     **Subjective Complaints**

Plaintiff contends the ALJ failed to provide clear and convincing reasons to reject her subjective symptom testimony. See JS at 11-13.

**1.**     **Law**

The Court engages in a two-step analysis to review the ALJ's evaluation of a claimant's symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

**2.**     **Testimony**

Plaintiff testified that she could not work due to severe pain and fatigue due to lupus. See AR 103. Plaintiff has pain in her hands and feet and undergoes infusions every four months. See AR 104. Plaintiff underwent chemotherapy for breast cancer in 2014 but stopped the treatment after she contracted a severe infection that almost killed her. See AR 105. Plaintiff has difficulty with any prolonged walking or standing, feels severe pain and swelling when she awakes, and has constant pain during the day. See AR 107-

09. Plaintiff cannot be exposed to sunlight because of her lupus, is currently homeless, and spends most of the day in bed. See AR 116. Plaintiff last used prescribed marijuana in January 2016. See AR 120-21.

### 3.    ALJ Reasoning and Analysis

The ALJ offered several reasons for discounting Plaintiff's complaints. See AR 20-21. The Court finds that ALJ's reasoning is clear and convincing and supported by substantial evidence.

First, the ALJ noted that the medical record conflicted with Plaintiff's testimony that her lupus had recently gotten much worse. See AR 20-21. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle, 533 F.3d at 1161. While Plaintiff remained symptomatic despite treatment, the medical record indicated few instances of flare-ups of her lupus conditions. See AR 1641-1906. The ALJ also pointed out that although Plaintiff reported "uncontrolled pain" in February 2014, she admitted not taking any pain medication. Id. (citing AR 863). These circumstances undermine Plaintiff's allegations that her lupus had gotten significantly worse and was completely disabling.

Plaintiff argues that the record demonstrates that she suffered from various lupus-related signs and symptoms. See JS at 12-13. But the fact that Plaintiff remained symptomatic was expressly noted by the ALJ and is not in dispute. See AR 20. Instead, the ALJ discredited Plaintiff because the medical record belied her testimony that her lupus was "as bad as ever." Plaintiff also argues that lack of objective medical evidence is not by itself a sufficient basis on which to reject her testimony. See JS at 16 (citing Bunnell v. Sullivan, 947 F.2d 341, 354 (9th Cir. 1991)). While true, the ALJ did not cite medical evidence as failing to corroborate Plaintiff's testimony, but as evidence that contradicted it. This is a clear and convincing reason. See Carmickle, 533 F.3d at 1161.

Second, the ALJ noted that Plaintiff's medical records contradicted her testimony about continued symptoms and side effects from chemotherapy. While Plaintiff experienced severe problems after undergoing chemotherapy in 2013, recent treatment records do not indicate similar issues. Likewise, the ALJ noted that there was no evidence to support Plaintiff's testimony that she had stage III breast cancer that spread to the left breast. See AR 105. Instead, the treatment records show that Plaintiff underwent a right breast mastectomy in August 2013 due to stage II cancer. See AR 582. The inconsistencies/contradictions between Plaintiff's testimony and the medical record were a sufficient basis for rejecting Plaintiff's subjective testimony. See Carmickle, 533 F.3d at 1161.

Third, the ALJ noted that Plaintiff's testimony regarding her marijuana use was contradicted by the record. Plaintiff testified that she was prescribed Cannabidiol (CBD) but stopped taking it in January 2016 and had not smoked marijuana since 2008. See AR 119-21. But Plaintiff repeatedly admitted to treatment providers that she routinely smoked and used marijuana in some fashion, even after January 2016. See AR 1576 (noting in April 2016 that "[Plaintiff] has been smoking marijuana daily"); 1749 (noting in July 2017 that "[Plaintiff] uses medical marijuana for appetite and sleep daily"); 1884 (listing under substance abuse "Current, Marijuana, Several times per day" in July 2017). Plaintiff does not explain this inconsistency in the Joint Statement, and the ALJ was permitted to rely on it in discounting her testimony.

## III.   CONCLUSION

The decision of the Social Security Commissioner is AFFIRMED and this case is dismissed with prejudice.

IT IS SO ORDERED.


Date: May 21, 2019

DOUGLAS F. McCORMICK
United States Magistrate Judge